RON QUIJADA (SBN 363726)
LAW OFFICES OF RON QUIJADA
750 E. GREEN STREET, SUITE 302
PASADENA, CA 91101
TELEPHONE: (626) 437-0724
FACSIMILE: (626) 604-8329
E-MAIL: RON@QUIJADALEGAL.COM

ATTORNEY FOR PETITIONER

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JOSE ANDRES MERCADO RIVERA**<br><br>Petitioner,<br><br>vs.<br><br>**FERETI SEMAIA, Warden, Adelanto ICE Processing Center; JAIME RIOS, Field Office Director, Los Angeles Field Office, ICE; TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of Homeland Security; and TODD BLANCHE, Acting Attorney General of the United States,**<br><br>Respondents | Case No.: 5:26-cv-6027<br><br>**PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**A# 201-679-395** |

## INTRODUCTION

1. Petitioner JOSE ANDRES MERCADO-RIVERA is a native and citizen of HONDURAS who has been physically present in the United States since approximately 2018.

2. Petitioner is currently detained at the ADELANTO ICE PROCESSING CENTER in Adelanto, California by immigration authorities and is the subject of a pending removal proceedings.

3. Petitioner brings this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging his unlawful arrest and detention by the United States Immigration and Customs Enforcement ("ICE").

4. On October 06, 2026, Petitioner was arrested by agents of U.S. Immigration and Customs Enforcement ("ICE"). Petitioner was arrested by immigration authorities in Tustin, California at his TVPRA interview or asylum interview. At the time of his arrest, Petitioner was complying with immigration services direction. Petitioner was not committing a crime and there was no indication that he was about to commit a crime.

5. Petitioner was arrested without a pre-arrest warrant or pre-deprivation hearing. He was given no notice of his impending arrest.

6. Before ICE arrested Petitioner in October 06, 2026, the government knew about Petitioner's immigration history because he was released in the United States in 2018. Petitioner was taken by the Department of Homeland Security in 2018 when he was 16 years old. He was processed and released inside the United States. He was in in removal proceedings and had an immigration case open before immigration services. His U.S. Citizen spouse filed an I-130 Petition for Alien Relative on his behalf that was approved.

7. Petitioner's detention is unlawful because it

(1) Violates his right to Procedural Due Process under the Fifth Amendment

(2) violates 8 U.S.C. §§ 1226(a) and 1357(a)(2) (**violates the injunction under *Vasquez Perdomo in the Central District)***

(3) violates the APA 5 U.S.C. 706(2)(A) – Abuse of Discretion

(4) violates the APA 5 U.S.C. 706(2)(A);(C);(D) – Not in Accordance with Law in Excess of Statutory Authority

8. Accordingly, Petitioner seeks a writ of habeas corpus ordering his immediate release from ICE custody because his continued detention.

## JURISDICTION AND VENUE

9. This Court has jurisdiction under 28 U.S.C. § 2241 (federal habeas statute); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 2201-2 (declaratory judgment). This his action arises under the Fifth Amendment to the United States Constitution, the Immigration and Nationality Act (INA), United States Constitution Article I, Section 9 (Suspension Clause).

10. Venue is proper in the Central District of California under 28 U.S.C. § 2241 because Petitioner is currently detained within this District at the Adelanto ICE Processing Center. Venue properly lies within the Central District of California under 28 U.S.C.§ 1391, because this is a civil action in which Respondents are agencies of the United States, Petitioner is detained in this District, and a substantial part of the events or omissions giving rise to this action occurred in the district.

## PARTIES

11. Petitioner JOSE ANDRES MERCADO-RIVERA is currently detained at the ADELANTO immigration detention center in Adelanto, California.

12. Respondent, FERETI SEMAIA, is the warden of Adelanto Detention Center, and is sued in his official capacity. The Adelanto Detention Center has immediate physical custody of Petitioner pursuant to the facility's contract with U.S. Immigration and Customs Enforcement to detain noncitizens and is a legal custodian of Petitioner.

13. Respondent, JAIME RIOS, is the ICE Field Office Director of the Los Angeles ICE Field Office and is sued in his official capacity. ICE Filed Office Director is responsible for the detention of Petitioner.

14. Respondent TODD LYONS is the Acting Director of U.S. Immigration and Customs Enforcement (ICE) and is sued in HIS official capacity. ICE is responsible for the detention of Petitioners.

15. Respondent MARKWAYNE MULLIN is the Secretary of the Department of Homeland Security ("DHS"), and is sued in his official capacity. The Secretary of Homeland Security is charged with the administration and enforcement of immigration laws. 8 U.S.C. § 1103(a).

16. Respondent TODD BLANCHE is the Attorney General of the United States and is sued in his official capacity as the head of the Department of Justice. The Attorney General is responsible for the fair administration of the laws of the United States.

## STATEMENT OF FACTS

17. Petitioner is a native and citizen of Honduras currently detained by Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center. ***See*** **https://locator.ice.gov/odls/**

18. Petitioner is a native and citizen of Honduras. He has continuously resided in the United States since 2018 when he entered the United States without inspection at the age of 16 and surrendered himself to the US border Patrol. He was then processed and released on his own recognizance to apply for asylum with USCIS. **(See Exhibit 1 – Asylum Application Receipt in 2020).**

19. Petitioner filed for and obtained work authorization based on his pending asylum application. **(See Exhibit 2 – Work Permit Approval Notice**)

20. In connection with his asylum application, he appeared for all his biometrics and interview appointments. He has worked legally in this country.

/ / /

**Immigration History**

21. Petitioner's wife filed a spouse petition on his behalf, and it was granted on 05/05/2026. (**See Exhibit 3 – Spouse's Approval Notice).**

22. Petitioner was unlawful presence waiver. (**See Exhibit 4 – Unlawful Presence Waiver Receipt).**

**Ties to the United States**

23. Petitioner is married to U.S. Citizen. Petitioner has a U.S. Citizen son. (**See Exhibit 5 – Son's Birth Certificate).** (**See Exhibit 6 – Marriage Certificate)**

**ICE Detention**

24. Petitioner was detained by ICE for his October 6, 2026, asylum interview before USCIS Los Angeles asylum office in Tustin, CA. **(See Exhibit 7 – Appointment Letter)**

25. Rather than conduct his interview, an asylum officer escorted him a backroom where ICE officers arrested him without first conducting a hearing to determine whether derailing Petitioner's asylum adjudication before USCIS and taking him back into custody was necessary to mitigate against flight risk and dangerousness concerns.

26. At the time of his arrest, Petitioner was complying with USCIS instructions, which was attending his USCIS interview.

27. Before taking Petitioner into custody, ICE did not do an assessment of flight risk or danger to the community.

28. Respondents had ample notice to obtain a warrant to arrest Petitioner at his appointment.

29. ICE has not shown any significant changes in circumstances for Petitioner arrest.

/ / /

/ / /

## LEGAL BACKGROUND

30. The following legal principles govern Petitioner's claims for habeas corpus relief. Although Congress has authorized the Executive Branch to arrest and detain certain noncitizens under the Immigration and Nationality Act ("INA"), that authority remains subject to the Constitution, federal statutes, and longstanding principles governing executive detention. As discussed below, the Great Writ of habeas corpus provides the traditional means by which federal courts review the legality of immigration detention and remedy constitutional violations.

**A. Detention of Non-Citizens Under the INA**

31. The Immigration and Nationality Act (INA) prescribes distinct forms of detention for noncitizens in removal proceedings, distinguished primarily by the status of the noncitizen at the time of apprehension.

32. First, 8 U.S.C. § 1226 authorizes detention of noncitizens in standard removal proceedings before an immigration judge. Individuals detained under § 1226(a) are entitled to a bond hearing to determine eligibility for release. 8 C.F.R. §§ 1003.19(a), 1236.1(d). Noncitizens who have been admitted, or who are physically present in the interior of the United States, are subject to detention under § 1226(a).

33. Second, noncitizens arrested, charged with, or convicted of specified criminal offenses are subject to mandatory detention under 8 U.S.C. § 1226(c).

34. Third, the INA mandates detention for noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1), and for other recent arrivals seeking admission under § 1225(b)(2). These provisions are designed for the border context and for individuals seeking admission.

35. Finally, the Act provides for detention of noncitizens previously ordered removed, including those in withholding-only proceedings. 8 U.S.C. § 1231(a)–(b).

**B. Habeas Corpus is the Traditional Means of Challenging Unlawful Executive Detention**

36. Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see *Rasul v. Bush*, 542 U.S. 466, 473 (2004).

37. Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to a petitioner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see *Rasul v. Bush*, 542 U.S. 466, 473 (2004). The writ is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2).

38. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A noncitizen in immigration custody may bring a § 2241 petition on the ground that his detention violates the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

39. The petitioner bears the burden of proving that he is being held contrary to law by a preponderance of the evidence. *Walker v. Johnston,* 312 U.S. 275, 286 (1941) ("On a hearing, [the § 2241 petitioner has] the burden of sustaining his allegations by a preponderance of evidence."); *Parke v. Raley,* 506 U.S. 20, 31 (1992); *Sumner v. Mata,* 449 U.S. 539, 551 (1981).

/ / /

/ / /

**C. Civil Immigration Detention is Subject to Constitutional Limitations**

40. Congress has authorized immigration detention under several provisions, including 8 U.S.C. §§ 1226 and 1231. That authority is not unlimited. Immigration detention is civil, not criminal, and remains subject to the Constitution's constraints.

41. The Supreme Court has repeatedly recognized that civil immigration detention serves limited regulatory purposes, principally ensuring a noncitizen's appearance at removal proceedings and protecting the community from danger. Because immigration detention is regulatory rather than punitive, continued detention must bear a reasonable relationship to those legitimate governmental interests. *Zadvydas*, 533 U.S. at 690; *Demore v. Kim*, 538 U.S. 510, 527-28 (2003); *Jennings v. Rodriguez*, 583 U.S. 281 (2018).

**D. The Fifth Amendment Requires Constitutionally Adequate Procedures before the Government May Deprive an individual of Physical Liberty**

42. The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. All persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," are entitled to protection under this provision of the Constitution. *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id*. at 690; see also *United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases).

43. A procedural due process claim involves two inquiries: first, whether the challenged government action implicates a protected liberty interest; second, if so, what process is constitutionally due before that interest may be taken. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); accord *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (Due Process Clause "requires some kind of a hearing before the State deprives a person of liberty or property" (emphasis in original)).

44. Where a protected liberty interest is at stake, courts apply the three-factor test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

45. In *Mathews*, the Supreme Court established three factors for a court to consider for purposes of determining what process is constitutionally sufficient to protect a liberty interest: The private interest that will be affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335; see *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, and noting that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context");

46. Because the government's discretion to detain individuals under 8 U.S.C. § 1226(a), and to revoke custody decisions under § 1226(b), is not "unlimited," that discretion must comport with the Mathews framework and constitutional due process more broadly. *Zadvydas*, 533 U.S. at 698.

**E. An Arrest Warrant is Required**

47. Section 1226(a) authorizes the arrest and detention of a noncitizen pending removal proceedings.

48. The Statute provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

49. Under 8 C.F.R. §236.1(b)(1), a noncitizen may only be arrested and detained pursuant to the Form I-200 Administrative Warrant if it is issued by an authorized official: At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest.

50. A warrant of arrest may be issued only by those immigration officers listed in § 287.5(e)(2) of this chapter and may be served only by those immigration officers listed in § 287.5(e)(3) of this chapter. 8 C.F.R. § 236.1(b)(1).

**F. A warrantless arrest is valid if the government satisfies the limited exceptions under 8 U.S.C. § 1357(a)(2)**

51. Immigration officers are authorized to make warrantless arrests in limited circumstances. These include when a noncitizen is "entering or attempting to enter the United States in violation of any law or regulation ... regulating the admission, exclusion, expulsion, or removal of aliens," or when an officer has reason to believe (i) the noncitizen is in the United States in violation of such laws or regulations and (ii) the noncitizen is likely to "escape" before an arrest warrant can be obtained. 8 U.S.C. § 1357(a)(2); see also 8 U.S.C. §§ 1357(a)(4) – (5) (providing other circumstances that justify warrantless arrest).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**COUNT ONE**

***Violation of Fifth Amendment – Right to Procedural Due Process***

52. Petitioner repeat, re-allege, and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

53. This Court and others in this District have found that re-detention, without notice or a pre-deprivation hearing, of a noncitizen who had been released on conditions shortly after their entry into the United States and had complied fully with those conditions, violated procedural due process. See *Cruz v. Lyons, et al.*, No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129 (C.D. Cal. Nov. 6, 2025) (granting temporary restraining order releasing noncitizen who had been paroled into the United States and was re-arrested at appointment with USCIS); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), adopted, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in the United States and was re-arrested at ICE check-in). See also *M.V.F. v. Santacruz*, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering release of noncitizen who had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in).

54. As in these cases, the Court considers Petitioner's procedural due process claim under the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The Mathews test balances three factors:

**Private Interest**

55. First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved

and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. at 335.

56. Petitioner has a substantial private interest in remaining out of custody. Petitioner has a substantial liberty interest in remaining free from immigration detention. Petitioner entered the United States in 2018 at the age of sixteen, voluntarily surrendered to Border Patrol authorities, and was subsequently released on his own recognizance. Since that time, Petitioner has continuously resided in the United States, filed an application for asylum, obtained employment authorization, and complied with his USCIS biometrics and interview appointments.

57. Petitioner has also established substantial family ties in the United States. He is married to a United States citizen and is the father of a United States citizen child. Moreover, on May 5, 2026, USCIS approved the immigrant visa petition filed by his wife, and Petitioner has pursued an unlawful presence waiver in furtherance of his immigration process. These circumstances demonstrate Petitioner's substantial interest in maintaining his established family life and pursuing immigration relief while remaining free from physical confinement.

58. Petitioner's release in 2018, followed by approximately eight years of liberty and compliance with immigration requirements, further supports his protected liberty interest.

**<u>Risk of Erroneous Deprivation.</u>**

59. With respect to the second Mathews factor, Petitioner alleges that the risk is high because prior to detention, he was not provided a meaningful opportunity to contest the factual or legal basis for his arrest. The risk of an erroneous deprivation of a petitioner’s liberty interest is considerable where he has not received any bond or custody redetermination. See *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) (risk of erroneous deprivation is

considerable for petitioner previously released on bond after it was determined he was not a danger to the community or a flight risk).

60. Here, the second *Mathews* factor strongly favors Petitioner because ICE re-detained him without prior notice or a meaningful opportunity to contest the necessity of his detention. On October 6, 2026, Petitioner voluntarily appeared for his scheduled asylum interview at the USCIS Los Angeles Asylum Office in Tustin, California. Rather than conduct the scheduled interview, an asylum officer escorted Petitioner to a back room, where ICE officers arrested him and transferred him into immigration custody.

61. Petitioner was not attempting to evade immigration authorities. To the contrary, his presence at the asylum office demonstrated his continued compliance with the Government's instructions and his willingness to participate in immigration proceedings. Despite Petitioner's years of compliance, ICE provided no pre-deprivation hearing to determine whether he presented a flight risk or danger to the community.

62. Moreover, ICE has identified no material change in circumstances demonstrating that Petitioner's continued liberty posed a risk of flight or danger to the community. His pending asylum application, employment authorization, approved spousal petition, and substantial family ties provide significant evidence favoring continued release. A hearing before a neutral adjudicator would have afforded Petitioner a meaningful opportunity to present this evidence and contest the necessity of detention.

63. Petitioner received none of this process.

**<u>Government Interest</u>**

64. As to the third Mathews factor, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most 'minimal[.]'" *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In

immigration court, custody hearings are routine . . . .” *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).

65. For approximately eight years, Petitioner remained at liberty while pursuing immigration relief. He obtained employment authorization, attended required USCIS appointments, and appeared voluntarily for his scheduled asylum interview on October 6, 2026. These circumstances weigh against any contention that immediate detention without a prior individualized hearing was necessary.

66. The Government could have continued Petitioner's existing release conditions while providing notice and an opportunity to be heard before a neutral adjudicator. The administrative burden of such a hearing is minimal because custody determinations are routinely conducted in immigration proceedings

67. Balancing the three *Mathews* factors, Petitioner's substantial liberty interest, the significant risk of erroneous deprivation arising from the absence of a pre-deprivation hearing, and the minimal administrative burden of providing constitutionally adequate procedures weigh in Petitioner’s favor.

68. Accordingly, Petitioner contends that Respondents violated his Fifth Amendment right to procedural due process by abruptly revoking his longstanding liberty and re-detaining him without prior notice, an individualized assessment, or a meaningful opportunity to contest the necessity of detention. Petitioner therefore requests immediate release under his prior conditions of release, restoring the status quo ante, subject to any future lawful custody determination consistent with due process.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## COUNT TWO

***Arrest and Detention in Excess of Statutory Authority***

***(Violation of 8 U.S.C. §§ 1226(a) and 1357(a)(2))***

69. Petitioner repeat, re-allege, and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

70. Section 1226(a) authorizes the arrest and detention of a noncitizen pending removal proceedings "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). When immigration officers proceed without a warrant, their authority is substantially narrower. *Arizona v. United States*, 567 U.S. 387, 407 (2012).

71. Under 8 U.S.C. § 1357(a)(2), immigration officers may conduct a warrantless arrest only where they have reason to believe both that the noncitizen is present in violation of the immigration laws and that the noncitizen "is likely to escape before a warrant can be obtained for his arrest." See also 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained.").

72. Respondents failed to satisfy those statutory prerequisites.

73. Petitioner entered the United States in 2018 at the age of sixteen, voluntarily surrendered to Border Patrol authorities, and was subsequently released on his own recognizance. Approximately eight years later, ICE arrested Petitioner in the interior of the United States while he was attending a scheduled USCIS asylum interview. Because Petitioner was apprehended in the interior rather than upon arrival at the border, and no alternative mandatory-detention authority has been identified, his detention is governed by 8 U.S.C. § 1226(a). Rodriguez *Vazquez v. Bostock*, 183 F.4th 1160, 1172 (9th Cir. 2026) (holding that noncitizens present without admission who are apprehended in the interior are subject to the detention regime of § 1226 rather than § 1225(b)(2)(A)).

74. Petitioner challenges the absence of a valid administrative arrest warrant authorizing his October 6, 2026 arrest. Upon information and belief, ICE officers did not obtain a pre-arrest Form I-200 warrant under § 1226(a). Accordingly, unless Respondents establish that a valid warrant existed before Petitioner's arrest, their authority to arrest him depended upon compliance with the narrow warrantless-arrest exception under 8 U.S.C. § 1357(a)(2).

75. Respondents cannot establish that Petitioner was likely to escape before an arrest warrant could be obtained. Petitioner had continuously resided in the United States since 2018 and remained known to immigration authorities throughout that period. He filed an asylum application, obtained employment authorization, attended his required biometrics appointments, and complied with USCIS instructions.

76. Most significantly, on October 6, 2026, Petitioner voluntarily appeared at the USCIS Los Angeles Asylum Office in Tustin, California, for his scheduled asylum interview. Rather than conduct the interview, a USCIS asylum officer escorted Petitioner into a back room, where ICE officers arrested him. At the time of the arrest, Petitioner was complying with the Government's instructions and was physically present at a federal immigration facility for an official appointment.

77. The circumstances of Petitioner's arrest undermine any suggestion that he was likely to escape before a warrant could be obtained. USCIS possessed Petitioner's identity, immigration records, and scheduled interview information. The Government therefore had an opportunity to obtain an administrative arrest warrant in advance rather than rely upon an exception intended for circumstances where an individual is likely to escape before a warrant can be secured. Petitioner's voluntary appearance, rather than evasion of immigration authorities, is affirmative evidence weighing against any claimed likelihood of escape.

/ / /

78. Furthermore, Petitioner's circumstances demonstrate substantial ties to the United States. He is married to a United States citizen, has a United States citizen child, and has pursued lawful immigration processes, including an approved spousal immigrant petition dated May 5, 2026, and an unlawful presence waiver application. These facts further undermine any individualized finding that Petitioner presented an immediate likelihood of escape.

**Vasquez Perdomo Violation of Injunction**

79. In *Vasquez Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP, 2026 WL 2751388, at *19 (C.D. Cal. Sept. 2, 2026), the Court reaffirmed that § 1357(a)(2) requires an individualized determination of probable cause that the noncitizen is likely to escape before a warrant can be obtained. The Court issued a preliminary injunction against the Government's practice of making warrantless civil immigration arrests in this District without such a pre-arrest determination.

80. Here, Petitioner was arrested on 10/06/2026 in violation of the injunction. The Court issued a preliminary injunction against the Government's practice of making warrantless civil immigration arrests in this District without such a pre-arrest determination.

81. Respondents cannot satisfy the warrantless requirement for the following reasons. Respondents arrested Petitioner without a warrant and without facts establishing that he was likely to escape before a warrant could be obtained, his arrest exceeded the authority conferred by 8 U.S.C. §§ 1226(a) and 1357(a)(2).

82. Accordingly, Petitioner's warrantless arrest exceeded the authority Congress conferred upon immigration officers under 8 U.S.C. §§ 1226(a) and 1357(a)(2), and his resulting detention is unlawful.

/ / /

/ / /

/ / /

/ / /

## COUNT THREE

***Violation of the Administrative Act***

***Arbitrary and Capricious Agency Action, Abuse of Discretion***

83. Petitioner repeat, re-allege, and incorporate by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

84. The Administrative Procedure Act ("APA") directs reviewing courts to hold unlawful and set aside reviewable agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

85. An agency acts arbitrarily and capriciously when it fails to consider relevant evidence, disregards important aspects of the problem, or fails to articulate a rational connection between the facts found and the decision made. *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983).

86. Subject to the APA's requirements for judicial review, Respondents' decision to revoke Petitioner's longstanding release and place him in immigration detention was arbitrary and capricious because it failed to account for material circumstances bearing directly on the necessity of detention.

87. Petitioner entered the United States in 2018 at the age of sixteen, voluntarily surrendered to Border Patrol authorities, and was subsequently released on his own recognizance. For approximately eight years, Petitioner continuously resided in the United States, pursued asylum, obtained employment authorization, and complied with USCIS biometrics and interview requirements.

88. On October 6, 2026, Petitioner voluntarily appeared for his scheduled asylum interview at the USCIS Los Angeles Asylum Office in Tustin, California. Rather than conduct the interview, an asylum officer escorted Petitioner into a back room, where ICE officers arrested him and placed him in immigration custody.

89. Respondents allegedly failed to conduct an individualized assessment of Petitioner's risk of flight or danger to the community before revoking his liberty. There is no identified material change in circumstances demonstrating that Petitioner's continued release posed a danger to the community or that he would fail to appear for immigration proceedings.

90. Moreover, Petitioner's substantial family ties, including his United States citizen spouse and child, approved spousal immigrant petition, pending asylum application, and history of compliance with immigration authorities, were material considerations bearing directly on his eligibility for continued release.

91. Respondents' decision to detain Petitioner without adequately considering these circumstances, or providing a reasoned explanation grounded in the administrative record, is alleged to constitute arbitrary and capricious agency action and an abuse of discretion under 5 U.S.C. § 706(2)(A).

92. Accordingly, to the extent the challenged custody decision constitutes reviewable final agency action under 5 U.S.C. § 704, Petitioner requests that the Court hold unlawful and set aside Respondents' custody determination and order appropriate relief, including restoration of his prior release conditions. Petitioner alternatively seeks relief under 28 U.S.C. § 2241.

## COUNT FOUR

***Violation of the Administrative Procedure Act***

***Agency Action Not in Accordance with Law and in Excess of Statutory Authority***

***(5 U.S.C. §§ 706(2)(A), 706(2)(C), and 706(2)(D))***

93. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

94. The Administrative Procedure Act authorizes reviewing courts to hold unlawful and set aside agency action that is "otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), "in excess of statutory jurisdiction, authority, or

limitations," § 706(2)(C), or undertaken "without observance of procedure required by law," § 706(2)(D).

95. Under 8 U.S.C. § 1226(a), immigration authorities may arrest and detain a noncitizen pending removal proceedings pursuant to an administrative warrant. When proceeding without a warrant, immigration officers must satisfy the requirements of 8 U.S.C. § 1357(a)(2), including an individualized basis to believe that the noncitizen is likely to escape before a warrant can be obtained. See *Arizona v. United States*, 567 U.S. 387, 407–08 (2012); 8 C.F.R. § 287.8(c)(2)(ii).

96. Petitioner's detention following his apprehension in the interior of the United States is presumptively governed by 8 U.S.C. § 1226(a), absent a separate applicable detention provision. *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1172 (9th Cir. 2026).

97. On October 6, 2026, Petitioner voluntarily appeared for his scheduled asylum interview at a USCIS office in Tustin, California. Although Petitioner complied with the Government's instructions, ICE officers arrested him and transferred him to immigration detention.

98. The circumstances surrounding the arrest undermine any claim that Petitioner was likely to escape before an administrative warrant could be obtained. Immigration authorities knew Petitioner's identity, immigration history, and scheduled appointment. Petitioner had continuously resided in the United States since 2018, maintained his asylum application, and repeatedly complied with immigration requirements.

99. If Respondents effected Petitioner's arrest without a valid administrative warrant, they were required to satisfy the statutory likelihood-of-escape requirement before taking him into custody. On the facts presently known, no individualized circumstances have been identified to establish that Petitioner was likely to escape before such a warrant could be obtained.

100. In *Qu v. Janecha*, No. 5:26-cv-05419-CTS (C.D. Cal. Oct. 9, 2026), the Court ordered the release of asylum applicants arrested without warrants while attending a scheduled USCIS biometrics appointment. The Court concluded that their warrantless arrests violated 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii), where the Government failed to establish the requisite likelihood of escape.

101. Petitioner's circumstances are substantially analogous. He voluntarily appeared at a government-designated immigration facility for a scheduled appointment and was taken into custody notwithstanding his continued compliance with immigration authorities. Absent a valid pre-arrest warrant or an individualized statutory basis for a warrantless arrest, Respondents exceeded the limits imposed by Congress on immigration enforcement authority.

102. Accordingly, Petitioner alleges that the challenged arrest was contrary to law and exceeded Respondents' statutory authority, in violation of 5 U.S.C. §§ 706(2)(A) and (C), and failed to observe procedures required by law under § 706(2)(D).

103. To the extent the challenged agency action is independently reviewable under the APA, Petitioner requests that the Court hold unlawful and set aside that action. Separately and independently, Petitioner seeks habeas relief under 28 U.S.C. § 2241 based on the alleged violation of 8 U.S.C. § 1357(a)(2), including immediate release under his prior conditions of release.

/ / /

/ / /

/ / /

/ / /

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this court:

a. Assume jurisdiction over this matter;

b. Issue a writ of habeas corpus directing Respondents to immediately release Petitioner from Custody

c. Order that the restoration of **Status Quo Ante** that Petitioner's release shall not be conditioned, placement on electronic or GPS monitoring, use of an ankle monitor, enrollment in an Intensive Supervision Appearance Program ("ISAP"), or compliance with any newly imposed geographic, travel, or movement restrictions;

d. Order Respondents to refrain from imposing any new or more restrictive conditions of supervision as a consequence of the October 6, 2026 arrest and detention, and to restore Petitioner's previously existing release status without additional restrictions;

e. Award reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), 5 U.S.C. § 504, or any other applicable law; and Order further relief as this Court deems just and appropriate

Respectfully Submitted,

Dated: 10/12/2026

*/s/ Ron Quijada*

Ron Quijada (SBN: 363736)
LAW OFFICES OF RON QUIJADA
750 E. Green Street, Suite 302
Pasadena, California 91101
Telephone: (626) 437-0724
Facsimile: (626) 604-8329
E-mail: ron@quijadalegal.com

**VERIFICATION PURSUANT TO 28 U.S.C. 2242**

I am submitting this verification on behalf of the Petitioner because I am one of Petitioner's attorneys. I have discussed with the Petitioner the events described in the Petition. Based on those discussions, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Respectfully Submitted,

Dated: 10/12/2026

*/s/ Ron Quijada*

Ron Quijada (SBN: 363736)
LAW OFFICES OF RON QUIJADA
750 E. Green Street, Suite 302
Pasadena, California 91101
Telephone: (626) 437-0724
Facsimile: (626) 604-8329
E-mail: ron@quijadalegal.com

## LIST OF EXHIBITS

**Exhibit 1 – Asylum Application Receipt in 2020**

**Exhibit 2 – Work Permit Approval Notice**

**Exhibit 3 – Spouse's Approval Notice**

**Exhibit 4 – Unlawful Presence Waiver Receipt**

**Exhibit 5 – Son's Birth Certificate**

**Exhibit 6 – Marriage Certificate**

**Exhibit 7 – Appointment Letter**